## N. Y. COMMON PLEAS.

### JOHN RUDOLPHY agt. PETER FUCHS *et al.*

In an action for damages for negligently allowing a croton water pipe, by bursting, or otherwise, to wet and do damage to goods and building situated in the third story of a store occupied by the defendant, the plaintiff at the same time occupying the first floor and basement.

And it appearing from the evidence, which was submitted to the jury, and upon which they found a verdict for the plaintiff, that in respect to the question of negligence that the plaintiff was quite as much the producing cause of the accident in not having shut off the water in his basement when the store was locked up and left for the night, as the defendants were by having a pump in the third story—the packing of the piston rod of which was so worn as to admit the croton to pass up through it, a fact of which they may have been and probably were entirely ignorant, or in other words, that the plaintiff's negligence in this aspect of the case is as great in degree as that of the defendants.

It seems, from the evidence, to be a case presenting the question of co-operative, mutual, or contributive negligence, which question the courts are usually exceedingly indisposed to take away from the jury, but when it is clearly defined and as palpable as it is in this case, it is a pure question of *law*, and no verdict of a jury can make it otherwise.

*October Term,* 1872.

DALY, *C. J.*—The jury was properly instructed in respect to the law, and it was for them to determine how the injury arose. They were warranted by the defendants evidence, in finding that the pump on the third story was out of order. The defendants witness, an expert, the plumber, was of the opinion that the water came through the packing box of the pump. He testified that each pump upon the top has a piston rod, and that the packing is made of tallow and cotton, that sometimes the packing gets worn out, and that the croton water, where that is the case, will force itself out at night, as at night it would rise to the third story. He was not asked by either party if he found the packing of the piston od worn out, or if he had, in fact, examined it.

The presumption, however, is that he did it, as he express-ed, that the leak, or more properly overflow, must have been from the packing box, and that it was in that state is further indicated by the fact that the defendant's servants were un-able to pump up any water for use in the third story and had to carry it up in pails. It may have been negligence on the part of the defendants to have a pump in this defective state, through which the water would rise at night, the pres-sure at that period being much greater than during the day, when the water is drawn off for use in all quarters of the city. This was probably the way in which the accident oc-curred, as the water was found in the morning in the third, second and first stories, and in that part of the build-ing in which it would be if, as indicated, it flowed up through and over the packing box of the pump. The pump was connected by a pipe, with a tank in another part of the floor where water was kept to supply water closets and wash basins on the third and second floors, but the plumber found no indication there of a leak in the pipes or the tank, or of any overflow out of or through the wash basin or closet, and there was no proof given by the plaintiff to contradict the statement of the plumber, that he found the plumbing work all in good order; that he had no occasion to make any re-pairs or to do any work except to disconnect the pipes, and blow through them to ascertain if any of them leaked, or his further statement that the place around the pump was wet and that there was no water in that part where the tank, the wash basins and the water closets were placed. The plaintiff's porter testified that he shut off the water at the main pipe in the basement before leaving the store the previous evening, that he did not do it every evening; but he generally did and was sure that he did so that night. If he did, the accident could not have occured, as the plumber conjectured by the water rising in the building during the night and passing through and out of the pump at the pack-ing box, and then the plaintiff's case would fail altogether, as

it would do, without any proof as to how the accident originated, except some evidence, to which I shall hereafter refer, or any evidence to show how the water came to flow over the floor of the third story, and in a greater degree over the second floor and down into the plaintiff's store, producing the damage, to recover for which he sued the defendants.

In actions of this nature, the *onus* is throughout for the plaintiff to establish that the injury arose from the defendant's negligence. See this question carefully examined in an article in the *American Law Review* for January, 1871, and the authorities there cited, and if the case is to rest upon the statement of the porter, then it is a case of loss and damage by croton water, without any proof of what was the cause of it, except the evidence to which I shall hereafter refer.

But this is always more or less a suspicious and weak kind of evidence, as subordinates are rarely willing to admit the injuries for which the employer is responsible occured by their negligence, especially in respect to matter resting more particurlarly within their own knowledge, and upon which it is generally difficult and may be impossible to contradict them directly. But the probability or truth of their statement, no matter how positively it is sworn to, may always be weighed by the jury in connection with the general facts of the case, or tested by the impression which the whole of the evidence makes upon them, when it is all before them. Thus in the present case, if the jury were satisfied of the truth of the statement of the plumber, they would be warranted in drawing the conclusions that the water was not shut off that night, and that the porter was either mistaken or had stated what he knew to be untrue. He admitted that he did not shut it off every evening, but that he did so generally, and was sure that he did so that night, which may after all have been his impression and honest belief, when in reality the fact was not so. If we could assume that the jury found the fact to be as he stated it, then the verdict which they gave against the defendants would be erroneous,

for it would divest the case of any explanation of the origin of the accident, except as I shall hereafter state, or of any evidence that it was caused by the negligence of the defendants or their subordinates. But if we assume as we might do in support of their verdict, that they found that it was produced by the water rising up in the night and running out through the pump, and that it was an act of negligence for the defendant to have a pump in so defective a state that the water rising at night would pass through it and flow the floor, that would not relieve the difficulty that exists in this case, for then the question arises whether it was not co-operative or contributive negligence on the part of the plaintiff, not to have had the water shut off that night in the basement, as that was his general practice or that of his porter. The plaintiff occupied the first floor or store, and the basement, and if, as the porter testified, he generally shut off the water before leaving at night, there must have been some reason for so general a practice. The plaintiff testified that he directed the porter to do this, and either he or the porter must have adopted it from a sense of its propriety or necessity, and if the accident occurred in the way which the plumber supposed, there was a necessity for this practice, as the defendants had a pump in the third story to enable them to keep water in the tank for the supply of water-closet and wash-basin upon that and the second story, an arrangement rendered necessary by the fact which was proved in the case that the water of the croton did not ascend as high as these stories throughout the day, and hence the necessity of having a tank in the third story filled with water that the defendants might use during the day in the water-closets and wash-basins, which had been placed in the second and third stories. A pump was a necessary part of the arrangement, and as the packing in the piston-rod of a pump is liable to get worn, it was necessary to avert the possibility of an accident from this cause at night, when the store was closed and the inmates had left, and of its pro-

ducing serious damage, that the water should be shut off when the store was locked up.

Whether the porter generally did this by the plaintiffs' direction, or as the result of his own observation, is immaterial, as in either event it was a precautionary measure, for there was no occasion for shutting off the water at the main pipe in the basement generally every night, unless something was apprehended by leaving it open. He says that he did it generally, but not every evening; that by doing it generally he regarded it as embraced within his duties, and yet discharged this part of them so negligently that he occasionally omitted doing it. If the accident occurred from this cause, then it would never have happened if the porter had done that evening what he was generally in the habit of doing, and it follows from this in respect to the question of negligence, that the plaintiff was quite as much the producing cause of the accident, in not having shut off the water in his basement when the store was locked up and left for the night, as the defendants were by having a pump in the third story, the packing of the piston of which was so worn as to admit the croton water to pass up through it, a fact of which they may have been, and probably were, entirely ignorant, or in other words, that the plaintiff's negligence in this aspect of the case is as great in degree as that of the defendants.

In whichever of these two points of view, therefore, the case is looked at, the same result must follow. If the water was shut off from the basement that night, then there is nothing in the case except the evidence to be referred to, to show how the accident originated, or to prove that it arose from negligence on the part of defendants; whilst on the other hand, if it were not shut off, and the accident happened by the water rising up and flowing out of the box of the pump, then it was co-operating, mutual, or contributive negligence on the plaintiff's part, to omit that what he or his porter had been generally in the habit of doing.

Courts are usually exceedingly indisposed to take away

the question of co-operative or mutual negligence from the jury, but when it is clearly defined and as palpable as it is in this case, it is a pure question of law, and no verdict of a jury can make it otherwise.

I come now to the evidence to which I have referred. One of the plaintiff's witnesses testifies that he saw the water coming from a pipe on the second floor; that the pipe had burst and that the water was coming from the pipe, which was a small one, near a stop cock.

It is remarkable that none of the other of the plaintiff's witnesses saw this.  The plaintiff himself was evidently under the impression that the pump was the cause of the injury.  He was not sure whether it, the pump was in the second or the third story, but the fact that it was in the third story was distinctly proved by the defendants, as also the fact that there was water on the floor of the third story, and that it was not around the pump.  These facts were not controverted, and if this witness saw water flowing from a pipe that had burst in the second story, no explanation was given of the circumstances that the third story was wet as well as the second.  But even if this witness saw what he said he did, that the water was flowing from a pipe that had burst in the second story, that would not suffice to show negligence on the part of defendants, unless the bursting of the pipe was from some defect in it for which the defendants were answerable, or through some neglect on their part which caused it to burst.  It was in winter, in the month of January, and lead pipes burst from many causes—the knawing of rats, the state of the weather, &c., or other causes, for which the proprietor or occupants of buildings are not answerable.  If the finding of the jury, therefore, rests upon the statement of this witness, it could not be supported without some additional evidence showing that it was through the defendants' negligence that this pipe burst, and there is no such evidence.  I am therefore of opinion that the judgment should be reversed, and a new trial ordered.